# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **FALCON CREST HOLDINGS, LLC** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **Civil Action No.:** _____ |
| § | |
| **RVR AVIATION, LLC, RON** § | |
| **WHITEHEAD, STEVE RODDY,** § | |
| **JEFF PRAY and JOHN PETERSEN** § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COMES NOW, FALCON CREST HOLDINGS, LLC, Plaintiff in the above entitled and numbered cause, complaining of RVR AVIATION, LLC, RON WHITEHEAD, STEVE RODDY, JEFF PRAY, AND JOHN PETERSEN, and files this Original Complaint, and in support thereof respectfully show the Court as follows:

## I.
## INTRODUCTION

1. Falcon Crest hired RVR Aviation to operate and maintain three of its valuable jets ("Aircraft"), which are collectively worth approximately $16,500,000. In the beginning, Falcon Crest was optimistic about working with RVR Aviation. But after several months, RVR Aviation's poor business management and abusive leadership revealed itself. Now, after collecting roughly more than $3.7 million in less than nine months, providing substandard and often negligent

services to Falcon Crest, even crashing one of the Aircraft, and refusing to provide billing transparency, RVR Aviation is trying to abuse Federal and State aircraft lien laws to extort Falcon Crest into paying improper demands.

## II.
## PARTIES

2. Plaintiff, Falcon Crest Holdings, LLC (hereinafter referred to as "Falcon Crest"), is a limited liability company conducting business in Texas with its principal place of business at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. Falcon Crest can be served with process its registered agent Justin Bosworth, at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225.

3. Defendant RVR Aviation, LLC (hereinafter referred to as "RVR Aviation") is a limited liability company conducting business in Texas with its principal place of business at 150 Aviation Way, Hangar 17N, Fort Worth, Texas 76106. RVR Aviation can be served with process through its registered agent, Ron Whitehead, at 150 Aviation Way, Hangar 17N, Fort Worth, Texas 76106.

4. Defendant, Ron Whitehead (hereinafter referred to as "Whitehead"), is an individual who resides in Tarrant County, Texas. Whitehead can be served with process at 1874 Paul Road, Mansfield, Texas 76063.

5. Defendant, Steve Roddy (hereinafter referred to as "Roddy"), is an individual who resides in Wise County, Texas. Roddy can be served with process at 4016 FM 920 Bridgeport, Texas 76426.

6. Defendant, Jeff Pray (hereinafter referred to as "Pray"), is an individual who resides in Texas and can be served at 400 Porter Rd, Bartonville, Texas 76226.

7. Defendant, John Petersen (hereinafter referred to as "Petersen"), is an individual who resides in Texas and can be served at his office at 150 Aviation Way, Hangar 17N, Fort Worth, Texas 76106.

## III.
## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because the case arises under 49 U.S.C. § 44107.

9. This Court has supplemental jurisdiction over the remainder of Falcon Crest's claims, which are based on state law, under 28 U.S.C. § 1367, as the remaining claims arise out of the same case or controversy as the federal claim.

10. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(c)(1) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, and because Defendant RVR Aviation operates its principal place of business in the Northern District of Texas.

11. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Ron Whitehead and Steve Roddy reside in the Northern District of Texas.

## IV.
## FACTUAL BACKROUND

### A. With Optimism, Falcon Crest set Terms with RVR Aviation in the Charter Management Agreements

12. Plaintiff Falcon Crest owns the three jets at issue (hereinafter referred to as the "Aircraft" or an "Aircraft" when used in the singular). The Aircraft include (1) an Israel Aircraft Industries Astra SPX (hereinafter referred to as "IAI") with U.S. Registration Number N207BC; (2) a Dassault Mystere Falcon 900 (hereinafter referred to as "Dassault") with U.S. Registration Number N721HM; and (3) a Dassault with U.S. Registration Number N618CX.

13. On or about May 23, 2023 and later on or about September 12, 2023, Falcon Crest and RVR Aviation entered into charter management agreements setting terms of the parties' relationship (the "Agreements"). On its part, RVR Aviation would operate and maintain the

Aircraft. Falcon Crest would provide the Aircraft for use, pay compensation to RVR Aviation, and receive revenue.

14. As the Aircraft's operator, RVR Aviation sold flights to customers and collected the revenue. Thereafter, RVR Aviation would retain a portion of that revenue and apply it towards costs such as maintenance. More specifically, as the operator, RVR Aviation was obligated to control the Aircraft in general, their storage, dispatch, scheduling, flight following, crews, and other operational tasks that may arise. On a monthly basis, RVR Aviation was supposed to provide Falcon Crest accounting information that covered income received and expenses incurred with respect to the operation of the Aircraft during the preceding month.

15. RVR Aviation employed the pilots it used to pilot the Aircraft.

16. RVR Aviation was also responsible to maintain the Aircraft. That included performing (or contracting for the performance of) repairs and regular maintenance. RVR Aviation was entitled to bill Falcon Crest for these services in accordance with terms set forth in the Agreements.

17. The Agreements included other material terms. One such term was a threshold $10,000 repair/maintenance notice and coordination obligation for certain situations. The Agreements specifically prohibited RVR from "undertaking, either directly or through the use any third-party vendor, any maintenance or repair of any single item on the [Falcon] Aircraft exceeding $10,000" prior to coordinating with Falcon Crest.

18. Another material term included in the Agreements was a disclosure obligation on the part of RVR Aviation. The Agreements also obligated RVR Aviation to provide "all records pertaining to the Aircraft, including without limitation all invoices, deposits, charter request, flight logs, pilot logs and maintenance reports" and "detailed maintenance invoices."

19. Moreover, RVR Aviation was required to keep Falcon Crest advised on all the maintenance work being performed on the Aircraft, as well as the maintenance that was expected to be undertaken in the future. By keeping Falcon Crest informed of when the Aircraft would be out of use for maintenance in advance, the sales team could "optimize charter scheduling based on expected maintenance and related items."

20. Falcon Crest entered into the Agreements with optimism. However, Falcon Crest's optimism did not endure after RVR Aviation's poor business practices, negligent operations and maintenance started to come to light. Falcon Crest did not renew the Agreements. The Agreements were even cancelled in or about April 2024, prior to the expiration of their initial term.

### B. RVR Aviation's Failure to Use Falcon Crest Funds for the Aircraft's Insurance

21. RVR Aviation collected money from Falcon Crest for the express purpose of paying engine insurance premiums. The amount of these insurance premiums to be paid by RVR Aviation was a function of the amount of hours flown by the Aircraft during the applicable time period. However, when RVR Aviation collected these amounts from Falcon Crest, RVR Aviation did not pay them as the terms of the Agreements required. With the aid of discovery, Falcon Crest will be able to specify the amount RVR Aviation wrongfully withheld in this way.

22. RVR Aviation concealed it was not paying these insurance premiums. Falcon Crest did not make this discovery until recently when Falcon Crest sought repair for harm to one of the Aircraft (caused by RVR Aviation's negligence) under an insurance policy. The insurance company notified Falcon Crest that RVR Aviation had not been paying the insurance premiums and denied performance of the necessary repairs, causing Falcon Crest to lose out on profitable business.

### C. RVR Aviation's Poor/Fraudulent Billing

23. Around March 14, 2024, RVR Aviation's chief officer, Whitehead, communicated that Falcon Crest's account was merely roughly "$10k in the hole." That would change drastically in just a couple weeks.

24. At the same time around March 14, 2024, Whitehead solicited a $150,000.00 advance from Falcon Crest citing a need to pay for jet fuel and maintenance. Apparently through poor business management, RVR Aviation had failed to pay its fuel suppliers and asked Falcon Crest for help. Whitehead expressly promised to return any surplus to Falcon Crest. Falcon Crest made the payment, but neither Whitehead nor RVR Aviation repaid any portion of the advance to Falcon Crest. More recently, Falcon Crest learned that RVR Aviation also failed to use these funds to pay a fuel supplier. Discovery will show how Whitehead and RVR Aviation spent the $150,000 Falcon Crest advanced.

25. Shortly after RVR Aviation told Falcon Crest they were only about "$10k in the hole," and Falcon Crest advanced $150,000 to RVR Aviation, RVR Aviation made an incredible demand to Falcon Crest for approximately $800,000 on or about April 16, 2024. This amount was anomalous and it appropriately prompted questions by Falcon Crest. So Falcon Crest attempted to invoke its rights under the Agreements to request records substantiating the incredible demand RVR Aviation was making.

26. Very suspiciously, Whitehead and RVR Aviation responded with complete refusal. The most information Falcon Crest would receive was an email from RVR Aviation providing, in its body and not even a spreadsheet, only a summary of very general line items purportedly supporting the incredible demand. RVR Aviation has refused to honor its disclosure obligations to provide substantiation for its astounding demands.

27. RVR Aviation not only blocked Falcon Crest's legitimate requests for information, it went immediately to asserting liens against the Aircraft, just two weeks after making its incredible demand. Rather than provide billing transparency, Whitehead and RVR Aviation filed putative liens on all three Aircraft on or about May 1, 2024 claiming roughly $800,000 in unpaid bills. Federal and State (Texas) law provide powerful remedies for aircraft liens, but it is clear Whitehead and RVR Aviation are abusing them in order to extort inappropriate payments from Falcon Crest. When faced with additional requests for billing substantiation, RVR Aviation provided only scant purported support, which contained glaring inconsistencies further supporting Falcon Crest's concern about the inaccuracies in RVR Aviation demands. After Falcon Crest noted it's concerns regarding these clear inaccuracies, Whitehead retorted that he would promptly begin repossession of the Aircraft. Falcon Crest is currently attempting to engage RVR Aviation through counsel in the hopes of avoiding the need to seek a temporary restraining order.

28. Importantly, the limited summary information RVR Aviation provided reveals multiple errors. For example, RVR Aviation credited Falcon Crest with $528,263.65 in four payments. In reality, Falcon Crest's bank records (as the withheld records of RVR Aviation would) show a total of $650,000 in five payments. It is also worth noting, that RVR Aviation's math claimed it collected more than $3 million in charter revenue directly from customers who flew on Falcon Crest's jets.

29. As Falcon Crest began looking closer at RVR Aviation's billing practices, more examples of improper billing came to light. For example on at least one known occasion, RVR Aviation billed Falcon Crest approximately $92,000 for repairs performed by a third party (not RVR Aviation). When Falcon Crest contacted that third party, Falcon Crest learned the actual cost of repairs was approximately $76,000.

30. Another example of RVR Aviation's improper billing practices is RVR Aviation's misuse of time billing programs. The Agreements entitled RVR Aviation to an hourly fee for certain services. When looking into these amounts, Falcon Crest learned that exorbitant amounts of time were inappropriately billed for tasks. In one instance, RVR Aviation billed forty hours (40) solely to review the placement of seatback placards in an Aircraft (the information cards placed in each seat).

31. In another example, RVR Aviation billed for time spent while no work was possible due to the wait for a replacement part.

32. Still other examples include RVR Aviation's billing for the same services on two of Falcon Crest's Aircraft but at very disparate amounts of time and cost.

33. Further, RVR Aviation has billed and is demanding payment for numerous expensive services costing more than $10,000 in regards to two of the Aircraft. The applicable Agreements only provided Falcon Crest's consent for expenses not exceeding that threshold. All other expenses required notice and consent of Falcon Crest. RVR Aviation complied with those requirements and obtained Falcon Crest's approval through early 2024. However, sometime thereafter RVR Aviation stopped complying and now seeks payment for unconsented repairs allegedly performed in the recent past.

34. Because RVR Aviation has refused to provide records in accordance with the Agreements, only discovery in this litigation is likely to reveal the true extent of RVR Aviation's improper billing practices.

### D.  RVR Aviation's Negligent Maintenance

35. RVR Aviation not only employed improper billing practices, it also was very negligent in its role as operator and maintainer for the Aircraft. RVR Aviation initially held themselves out to

be experts of Dassault Aviation jet aircraft, but after further discussions with Petersen, who is RVR's Director of Maintenance, RVR's maintenance staff, and third-party operators and mechanics familiar with RVR Aviation, Falcon Crest started to question the veracity of those representations. On multiple occasions, RVR Aviation negligently diagnosed issues with the Aircraft. RVR Aviation failed to correctly identify causes of issues and instead performed multiple operations/repairs that were completely needless and wasteful. Then, only after multiple needless repairs would RVR Aviation stumble on the actual cause and perform the needed repair. This caused prolonged "ground time" for the Aircraft of an extreme magnitude when they are capable of generating in excess of $50,000 a day in revenue, causing significant financial harm to Falcon Crest. It also caused Falcon Crest to incur costs for operations/repairs that should never have occurred.

36. One example of RVR Aviation's negligent maintenance involved Petersen's handling of the anti-skid computers for two of Aircraft. Anti-skid computers rarely need replacing and the odds of two of the Aircraft requiring new anti-skid computers was astronomical. But they are expensive. Under the professed belief they needed to be replaced on both Aircraft, RVR Aviation ordered a replacement part from the Aircraft's manufacturer. When the anti-skid computer arrived, RVR Aviation and Petersen failed to recognize what it was. Instead, mistaking it for the wrong part (i.e. believing the Aircraft's manufacturer sent the wrong part), RVR Aviation, through Petersen, sent it back. Falcon Crest learned of RVR Aviation's rejection of the part and suggested RVR Aviation had made a mistake. Petersen rebuffed Falcon Crest, apparently offended at the suggestion he had made an error. It was only thereafter, and after needless delay, Petersen acknowledged he was mistaken and re-ordered the same parts for a second time.

37. Mistakes like this one also meant that customers who had scheduled trips on the grounded Aircraft would have their trips cancelled, imparting additional financial harm. On multiple occasions Falcon Crest attempted to assist RVR Aviation and its clearly struggling maintenance staff by connecting RVR Aviation with respected industry veterans that offered to provide guidance or general assistance in diagnosing issues. RVR Aviation refused to avail itself of such assistance.

38. Later in the relationship, Falcon Crest made multiple direct requests for RVR Aviation to halt its negligent repair actions and use a more competent third-party maintenance shop to look after and care for their Aircraft. However, RVR Aviation wanted to keep the maintenance in-house to continue to extract as much money as possible from Falcon Crest and repeatedly refused Falcon Crest's requests.

### E.  RVR Aviation's Negligent Hiring Practices

39. Instead of hiring well qualified candidates for its pilots, management staff, maintenance team, or other key roles, RVR Aviation relies heavily on nepotism for as many positions as possible. For example, key management roles and head flight dispatch roles are held by Whitehead's children. In fact, virtually every member of Whitehead's family has a key position in what is a relatively small company.

40. RVR Aviation did not adhere to acceptable business practices when it refused to search for qualified candidates or post standard job searches. RVR Aviation preferred to recycle existing pilots and employ Whitehead's friends as opposed to hiring qualified candidates. When Falcon Crest brought its Aircraft to RVR Aviation, it trusted RVR Aviation to locate and hire qualified candidates to pilot those aircraft. Instead, RVR Aviation selected its own underqualified pilots, even some candidates that had zero experience on the airframe in question. RVR Aviation did so with the intent to push much of RVR Aviation's overinflated payroll onto Falcon Crest. This is

clearly supported by RVR Aviation's aggressive billing practices whereby it is trying to push its employee payroll onto Falcon Crest, even though the substantial majority of those pilots' time is not focused on services for Falcon Crest or the Aircraft.

41. With respect to one of Falcon Crest's aircraft, RVR Aviation did not sufficiently search for, find or provide a pilot who had the appropriate amount of experience to operate that aircraft. Furthermore, Whitehead elected to send his long-time friend and casual pilot, Pray, to train on one of the Aircraft in question. Pray had no experience in this airframe, yet Whitehead elected to send him instead of finding suitable pilots. Pray was woefully inexperienced as a charter pilot or on that Aircraft, but Whitehead saw yet another opportunity to try and extract money from Falcon Crest and pass it around to his friends and family.

42. Similarly, Whitehead sent one of his existing salaried pilots, Roddy, to training on an Aircraft he had minimal experience with. This would allow RVR Aviation to bill Falcon Crest for yet another of their already salaried pilots and offload RVR Aviation's own separate operating costs to Falcon Crest. Together, Roddy and Pray had virtually no experience on this airframe, which inevitably led to disaster.

### F.  RVR Aviation's Negligence: Aircraft Accident and Concerning Cover Up

43. On or about March 28, 2024, a close customer of Falcon Crest was scheduled for a flight aboard one of the Aircraft. For safety reasons the customer had specifically required that the pilots be certified "Part 135," and the invoice reflected that the flight was scheduled as a Part 135 flight. To be considered a Part 135 flight, higher safety standards of the Federal Aviation Authority ("FAA") apply.

44. With full knowledge the flight was supposed to be an FAA Part 135 flight, RVR Aviation selected Roddy and Pray to serve as the pilots. However, during the flight, something went wrong.

It is unclear at this time, and discovery is required, whether pilot negligence or negligent maintenance, or both, caused the accident, but ***Roddy and Pray piloted one of Falcon Crest's Aircraft off the runway and crashed it***. Falcon Crest's close customer was in the Aircraft at the time.

45. Multiple third parties have reviewed the Aircraft at issue and none have so far identified any mechanical fault as causing the crash. Both Roddy and Pray were woefully underqualified to operate that Aircraft. RVR Aviation and Whitehead were negligent in entrusting Roddy and Pray.

46. Then in the immediate aftermath of the Aircraft crash, one witness attempted to access the flight scheduling database to review the flight's records. That witness could not do so, however, because an employee of RVR Aviation had the flight "locked out." Immediately thereafter, the flight database showed attempts to retroactively modify the flight to falsely represent the flight was scheduled as a Part 91 flight. RVR Aviation did this with the apparent belief it would help shield RVR Aviation from heightened scrutiny associated with Part 135 flights and potentially shift the burden of liability on to another party.

47. The crash resulted in considerable harm to the Aircraft and Falcon Crest.

## V.
## CAUSES OF ACTION

### A.  COUNT ONE: AGAINST RVR AVIATION FOR DECLARATORY JUDGMENT

48. Plaintiff Falcon Crest incorporates each and every paragraph in this Complaint as if fully set forth herein.

49. Falcon Crest is an entity interested under the Agreements constituting a contract who is entitled to obtain a declaration to determine the rights, duties, and/or obligations of the parties under such contract. *See* 28 U.S.C. § 2201.

50. Falcon Crest requests this Court to declare the rights, status, and legal relations under the Agreement and arising from RVR Aviation's actions in regards to the Aircraft. In particular, Falcon Crest seeks a declaration from the Court that the putative liens RVR Aviation placed on the Aircraft are invalid and unenforceable under 49 U.S.C. § 44107 and Tex. Prop. Code Ann. § 70, and that RVR Aviation has no interest in the Aircraft following the termination of the Agreement.

51. Falcon Crest requests this Court construe the Agreements and declare the Agreements provided consent only for repairs not exceeding $10,000, after such threshold, specific consent was required by other means, and that RVR Aviation's putative liens include certain unconsented repairs.

52. Additionally, Falcon Crest requests this Court to declare, if any, the amount justly owed by Falcon Crest to RVR Aviation.

### B.  COUNT TWO: AGAINST RVR AVIATION AND RON WHITEHEAD FOR SLANDER OF TITLE OF THE AIRCRAFT

53. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

54. On April 5, 2024, after the termination of the Agreements, RVR Aviation filed a Notice of Lien against each of the Aircraft owned by Falcon Crest.

55. In filing the aforesaid Notice of Liens, RVR Aviation and Whitehead acted wrongfully and maliciously and in order to vex and harass Falcon Crest as a result of Falcon Crest requesting to inspect RVR Aviation's records, with full knowledge that the Notice of Liens was inoperative and of no legal force or effect. The filing of said Notice of Liens has slandered and clouded the title to Falcon Crest's property.

56. RVR Aviation and Whitehead knew that two of Falcon Crest's aircraft were actively listed for sale and that the filing of the Notice of Liens would cloud and slander title to Falcon Crest's

property. Said acts of RVR Aviation and Whitehead were carried out with the willful, wanton, and malicious intention of inflicting injury on Falcon Crest.

57. Falcon Crest has suffered and continues to suffer injury and damages as a result of the aforesaid wrongful and malicious acts of RVR Aviation and Whitehead.

### C.  COUNT THREE: AGAINST RVR AVIATION TO QUIET TITLE

58. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

59. Falcon Crest is the titled owner of the Aircraft.

60. RVR Aviation claims an interest adverse to Falcon Crest in the property as the holder of a lien for alleged unpaid fees. The adverse claim described in the preceding paragraphs is without any right whatsoever, and no such defendant has any right, title, lien, or interest in the property or any party of it.

61. Falcon Crest seeks to quiet title to the property, against all adverse claims of all RVR Aviation.

### D.  COUNT FOUR: AGAINST RVR AVIATION AND RON WHITEHEAD FRAUDULENT LIEN

62. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

63. RVR Aviation's actions in filing liens against the Aircraft owned by Falcon Crest are in violation of Tex. Prop. Code § 12.002(a).

64. RVR Aviation knew when filing the liens against the Aircraft that the amount recorded in the liens was incorrect and did not reflect a proper amount that Falcon Crest owed to RVR Aviation.

65. RVR Aviation filed the fraudulent liens against the Aircraft with the intent that the documents be given the same legal effect as a court document evidencing a valid lien against the Aircraft.

66. In addition, RVR Aviation filed the liens with incorrect monetary amounts with the intent to cause financial injury to Falcon Crest and to harass Falcon Crest after it requested to inspect RVR Aviation's records and logs under the Agreement.

67. As a result of RVR Aviation's fraudulent liens, Falcon Crest has suffered injury and damages.

68. Falcon Crest is also entitled to statutory damages from RVR Aviation under Tex. Prop. Code § 12.002(b).

### E. COUNT FIVE: AGAINST RVR AVIATION, RON WHITEHEAD, AND JOHN PETERSEN FOR NEGLIGENT MAINTENANCE OF THE AIRCRAFT

69. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

70. At all relevant times to this Complaint, RVR Aviation had the sole responsibility of maintaining the Aircraft.

71. RVR Aviation, on multiple occasions, failed to perform maintenance services with due care.

72. RVR Aviation caused delays that resulted in a significant loss of income as well as incur expensive maintenance and repair costs which would have been avoided completely through the exercise of due care.

### F. COUNT SIX: AGAINST RVR AVIATION, RON WHITEHEAD, STEVE RODDY, JEFF PRAY, AND JOHN PETERSEN FOR NEGLIGENCE

73. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

74. At all relevant times to this Complaint, RVR Aviation was the sole operator of the Aircraft.

75. RVR Aviation, Whitehead, Roddy, Pray, and Petersen were each negligent in the staffing, hiring, entrustment, oversight, scheduling, operation, control, and piloting of the Aircraft on or about March 28, 2024.

76. These Defendants' negligence causes the Aircraft to exit the runway and crash.

77. As a direct and proximate result of this negligence the Aircraft sustained serious damage exceeding $1 million and is grounded for a period of time, resulting in lost revenue.

### G.  COUNT SEVEN: AGAINST RVR AVIATION AND RON WHITEHEAD FOR BREACH OF CONTRACT

78. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

79. The Agreements constitute valid and enforceable contracts which gave RVR Aviation the responsibility of maintaining and operating three Aircraft owned by Falcon Crest. Defendant RVR Aviation's actions as described above constitutes breach of contract.

80. RVR Aviation breached the Agreements by failing to pay applicable insurance premiums, fuel, and other items.

81. RVR Aviation has breached the Agreements by demanding payment of improper amounts and asserting liens based on same.

82. RVR Aviation has breached the Agreements by refusing to provide complete access to records concerning the Aircraft.

### H.  COUNT EIGHT: AGAINST RVR AVIATION AND RON WHITEHEAD FOR UNJUST ENRICHMENT

83. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

84. RVR Aviation received monies from Falcon Crest which RVR Aviation was required to pay to third parties. However, RVR Aviation instead retained those monies improperly.

85. RVR Aviation benefited from its wrongful use of the funds provided by Falcon Crest.

86. Falcon Crest was not provided services in proportion or of the quality expected from RVR Aviation that align with the amount of funds provided by Falcon Crest.

87. Under the circumstances, the enrichment of RVR Aviation is unjust.

## I. COUNT NINE: AGAINST RVR AVIATION AND RON WHITEHEAD FOR BREACH OF FIDUCIARY DUTY

88. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

89. At all relevant times to this Complaint there existed a fiduciary relationship of RVR Aviation and Whitehead towards Falcon Crest.

90. RVR Aviation and Whitehead held Falcon Crest's three Aircraft for Falcon Crest's benefit.

91. RVR Aviation and Whitehead also held advanced money from Falcon Crest for specific purposes to be performed by RVR Aviation and Whitehead. RVR Aviation and Whitehead were meant to use the advanced money for these actions, but it failed to do so on multiple occasions.

92. RVR Aviation and Whitehead breached their fiduciary duties to Falcon Crest in that they breached the duty of full disclosure owed to Falcon Crest. These Defendants failed to provide appropriate disclosure to Falcon Crest concerning maintenance and repairs for the Aircraft.

93. RVR Aviation and Whitehead also failed to disclose to Falcon Crest that they had failed to pay the insurance premium on multiple occasions. Given that Falcon Crest had advanced the funds for those payments, RVR Aviation and Whitehead had a duty to disclose their failure use Falcon Crest's money in a proper manner and pocketing it for their own gain.

94. RVR Aviation and Whitehead also breached their fiduciary duties to Falcon Crest by failing to conduct fair, honest dealing with Falcon Crest. RVR Aviation, on multiple occasions, overbilled Falcon Crest significantly for the maintenance work done on the Aircraft.

## VI. DAMAGES

95. As a result of Defendants' actions described above, Plaintiff Falcon Crest has suffered damages. As such, Falcon Crest seeks to recover from Defendants the following:

    A. Actual damages;

  B. Consequential damages;

  C. Exemplary damages;

  D. Statutory damages;

  E. Prejudgment and post-judgment interest;

  F. Attorney fees and costs;

  G. Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

96. Additionally, Falcon Crest asks that the Court grant the declaratory relief requested herein—namely, a declaration providing that the liens on each Aircraft brought by RVR Aviation are invalid and unenforceable. Falcon Crest also requests that this Court make a declaration as to the amount justly owed by Falcon Crest to RVR Aviation under the terms of the Agreement.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial in this matter, the Court enter judgment in favor of Plaintiff and against Defendant for actual damages, consequential damages, exemplary damages, statutory damages, pre- and post-judgment interest at the maximum rate allowed by law, attorney fees and costs, declaratory relief, and such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**MCCATHERN, PLLC**

*/s/ Justin N. Bryan*
Justin N. Bryan
State Bar No. 24072006
jbryan@mccathernlaw.com
Asher K. Miller
State Bar No. 24131512
amiller@mccathernlaw.com

Regency Plaza
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 10, 2024, a true and correct copy of the above and foregoing document was served upon the parties in accordance with the Texas Rules of Civil Procedure.

 */s/ Justin N. Bryan*
Justin N. Bryan